FILED

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

2016 SEP 14  PM 12: 08

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

| | | |
|---|---|---|
| AARON GEORGE GUZMAN, MICHAEL GOTHIE AND DANIEL W. JOHNSON | § § § | |
| Plaintiffs, | § § | Civil Action No. 1:15-CV-01061 (LY) |
| v. | § § | **Jury** |
| TECHERTAIN, LLC D/B/A ONBUZZ, ALAN ELIAS, AND DAVID VAN GORDER | § § § § | |
| Defendants. | § | |

**PLAINTIFFS' SECOND AMENDED PETITION**

Plaintiffs Aaron George Guzman ("*Guzman*"), Daniel W. Johnson ("*Johnson*"), and Michael Gothie ("*Gothie*") file this Second Amended Petition against Defendants Techertain, LLC d/b/a OnBuzz, ("*OnBuzz*"), Alan Elias ("*Elias*"), and David Van Gorder ("*Van Gorder*"), and respectfully state as follows:

I.   NATURE OF SUIT

1.   Defendants employed Gothie (for six months), Guzman (for eight months), and Johnson (for two years) as executives within OnBuzz. Pursuant to the agreements and representations of the parties, Plaintiffs were to receive annual compensation, expense reimbursements, incentive plans, commissions, and/or benefits. To date, Defendants have failed to pay Plaintiffs any compensation for their services, for which Plaintiffs bring suit.

II.   PARTIES

2.   Guzman is an individual residing in Williamson County, Texas at 2930 Grand Oaks Loop, Unit 201, Cedar Park, Texas 78613.

3. Johnson is an individual residing in Williamson County, Texas at 16407 Martha's Cove, Austin, Texas 78717.

4. Gothie is an individual residing in 28 Mill Street, Manchester, MA 01944.

5. OnBuzz is a Texas limited liability company with its principal place of business located at 100 Congress Avenue, Suite 2000, Austin, Texas 78701. OnBuzz has already made an appearance in this matter.

6. Elias is an individual residing in Travis County at 1900 Holiday Hills Cove, Austin, Texas 78732. Elias has already made an appearance in this matter.

7. Van Gorder is an individual residing in Buncombe County at 27 Madison, Ashville, North Carolina 28801-2127. Van Gorder has already made an appearance in this matter.

### III. JURISDICTION AND VENUE

8. This Court has jurisdiction over this case pursuant to the Court's federal question jurisdiction as set forth in 28 U.S.C. § 1331.

9. OnBuzz's place of business is in this District, and Elias resides in this District. Van Gorder has the requisite minimum contacts with this District, and the causes of action asserted against him relate largely to his substantial and continuous activities taking place in this District. At all times while Plaintiffs were employed by Defendants, they performed a significant portion of their job duties in this District. Venue is therefore proper in this Court because multiple Defendants are located in this District, and a substantial part of the events forming the basis of the suit occurred in this District.

### IV. FACTUAL ALLEGATIONS

10. Plaintiffs are executive-level professionals with decades of experience in their respective fields. Elias is the CEO of OnBuzz, and Van Gorder is its CFO.

11.     In August 2012, Elias and Van Gorder hired Johnson as an executive-level employee of OnBuzz. In that capacity, Johnson would provide services to OnBuzz and potentially serve as the president of an OnBuzz subsidiary that was anticipated to be formed in the near future. For his services, Johnson was offered an annual salary of $200,000 by OnBuzz, equity in OnBuzz and the anticipated new company, a 2.5% commission on any OnBuzz funding secured by him, reimbursement of business expenses, and participation in OnBuzz's various benefit plans, including health insurance. Johnson accepted this offer, executing two contracts containing these terms, and began working for Defendants in late August 2012. While employed by Defendants, Johnson performed all duties for which he was hired, and all other tasks assigned to him by his employers from time to time.

12.     In December 2013, Elias and Van Gorder hired Gothie as Chief Operating Officer ("COO"). In that role, based on his more than 15 years of success in finance, digital advertising, product management and new market development, Gothie would drive much of the strategic execution and planning for Techertain and OnBuzz. He was instrumental in raising money to support the growth of the Company and was granted a bonus of $15k and an ownership interest in the Company in July of 2013. For his services as a full-time employee beginning in December 2013, Gothie was promised a salary of $200,000 per year, of which the Defendants paid only $5,000. While employed by Defendants, Gothie performed all duties for which he was hired, and all tasks assigned to him by his employers from time to time.

13.     In June 2014, Elias and Van Gorder hired Guzman as OnBuzz's Chief Marketing Officer ("CMO"). In that role, based on his more than 15 years of success in digital and traditional marketing, Guzman would create a marketing plan for a series of Hollywood-quality feature films, focusing on digital marketing techniques that would require engagement of a top advertising

agency. Guzman created OnBuzz's business plan for soliciting funding from investors and lenders. He also developed film comparables analyses, created necessary marketing materials and presentations to drive OnBuzz forward and secure a slate of six feature films from prospective screenplay writers and film producers, and engaged in other activities as required by his employers. For his services, Guzman was offered a base salary of $140,000.00 per year, along with an incentive plan and benefits. Guzman accepted this offer and began working as OnBuzz's CMO on June 23, 2014. While employed by Defendants, Guzman performed all duties for which he was hired, and all tasks assigned to him by his employers from time to time.

14. Throughout their employment, Gothie (with the exception of one $5,000 payment), Guzman, and Johnson never received a paycheck. Defendants wholly failed to pay them *any* wages—much less their agreed-upon salaries, incentives, and benefits. Defendants have likewise failed to reimburse a significant amount of business expenses incurred by Plaintiffs during their employment.

15. Gothie resigned no earlier than May 2014 after at least six months of unpaid employment. Johnson resigned in September 2014 after over two years of unpaid employment. Guzman resigned in February 2015 after eight months of unpaid employment.

16. Despite Plaintiffs' repeated demands, Defendants have refused to pay any of their owed and agreed-upon wages, expenses, and other compensation.

17. Plaintiffs now bring this suit to recover for Defendants' wrongful conduct.

## V. CAUSES OF ACTION AGAINST

18. Plaintiffs assert the following claims against the specified Defendants. To the extent any of the following claims are inconsistent, Plaintiffs assert such claims in the alternative.

### A. FLSA Violation – Failure to Pay Minimum Wage by all Defendants to all Plaintiffs

19.     All of the foregoing and below paragraphs are incorporated as if fully set forth herein verbatim.

20.     Defendants were all "employers" of Plaintiffs under the federal Fair Labor Standards Act ("FLSA"). Each of the Plaintiffs was hired by, and reported directly to, both Elias and Van Gorder. OnBuzz is not a large company; it is a small operation conducted by a handful of personnel. Both Van Gorder and Elias (a) were the only officers of OnBuzz who outranked Plaintiffs; (b) signed Johnson's employment agreement; (c) had discussions with the Plaintiffs regarding the terms of their employment; (d) collectively established the basis for each Plaintiff's method of compensation; and (e) oversaw and controlled the work performed by all of the Plaintiffs. Financial matters (which all Plaintiffs assisted with on occasion in one way or another) were the responsibility of Van Gorder, while other matters were the responsibility of Elias. The Plaintiffs therefore reported to Elias or Van Gorder according to the nature of the work being done at the time. Any of the Plaintiffs could be terminated by Elias or Van Gorder. To the extent employment records were maintained, each Defendant had access to and maintained employment records of the Plaintiffs. Defendant OnBuzz was an employer of all Plaintiffs by virtue of the actions of Van Gorder and Elias.

21.     Plaintiffs were not paid their federally mandated minimum wages for all workweeks in violation of the FLSA, and there are no applicable exemptions that allowed Defendants to circumvent the minimum wage requirements of the FLSA.

22.     Plaintiffs are entitled to recover compensation from Defendants for the hours they worked for which they were not paid at the federal minimum wage and overtime rates.

23. Further, Plaintiffs are entitled to an amount equal to all of their unpaid wages as liquidated damages pursuant to 29 USC § 216(b).

### B. Breach of Contract by OnBuzz as to all Plaintiffs

24. All of the foregoing and below paragraphs are incorporated as if fully set forth herein verbatim.

25. Plaintiffs entered into employment agreements with OnBuzz. Through the conduct described above, OnBuzz has materially breached the agreements by failing to pay wages, reimbursements, and other compensation agreed to under Plaintiffs' employment agreements.

26. All conditions precedent to Plaintiffs' right to bring this action and to recover the requested relief have been performed, have occurred, or have been waived.

27. As a direct and proximate result of OnBuzz's breaches, Plaintiffs have suffered actual damages. In addition to the compensation, incentives, benefits, and expense reimbursements that were to be paid to them, Plaintiffs' actual damages may include fines, penalties, or other charges resulting from OnBuzz's failure to properly report Plaintiffs' wages to the Internal Revenue Service and/or to withhold or pay the appropriate taxes associated with Plaintiffs' compensation schemes.

### C. Quantum Meruit as to all Plaintiffs

28. All of the foregoing and below paragraphs are incorporated as if fully set forth herein verbatim.

29. Plaintiffs provided valuable services to Defendants. Defendants accepted Plaintiffs' services and allowed them to perform such services for Defendants' benefit, and Defendants had reasonable notice that Plaintiffs expected compensation for their services performed for Defendants' benefit.

30.    As a result, to the extent valid employment agreements between Plaintiffs and OnBuzz are not found to exist (including by reason of fraudulent inducement), Plaintiffs are entitled to recover under a theory of *quantum meruit* for the reasonable value of their services to Defendants.

### D. Prohibited Distribution as to all Plaintiffs

31.    All of the foregoing and below paragraphs are incorporated as if fully set forth herein verbatim.

32.    On information and belief, Plaintiffs suspect that OnBuzz has made cash distributions to Elias and Van Gorder despite the fact that at the time of such distributions OnBuzz's significant financial liabilities to Plaintiffs and other creditors exceeded the fair value of OnBuzz's assets. For example, Plaintiffs are aware of OnBuzz receiving capital both from an investor named "Bonnie" in November 2014 and a bridge loan in December 2014. Plaintiffs believe such funds were used to pay Defendants Elias and Van Gorder, potentially in the form of distributions. However, Plaintiffs' suspicion in this regard cannot presently be confirmed as the information concerning such distributions is peculiarly within the possession of Defendants. To the extent such distributions were made, Elias and Van Gorder were aware of OnBuzz's financial situation and nevertheless accepted such distributions to Plaintiffs' detriment.

33.    Pursuant to §101.206 of the Texas Business Organizations Code, Plaintiffs request that Elias and Van Gorder be required to return any such distributions to OnBuzz, and that OnBuzz utilize such returned distributions to pay Plaintiffs the amounts demanded herein.

### E. Fraud by all Defendants as to Guzman and Johnson

34.    All of the foregoing and below paragraphs are incorporated as if fully set forth herein verbatim.

35. To induce their employment in the first instance, and thereafter to convince them to continue working for OnBuzz without pay, Guzman and Johnson were repeatedly told by Elias and Van Gorder that OnBuzz would soon receive sufficient capital (through loans, revenue, and/or investment) to pay the salaries, benefits, expenses, and other compensation promised to them. These repeated promises of imminent funding were either known by Elias and Van Gorder to be false, or were made as statements of fact with reckless disregard for their truth.

36. During meetings in May and June of 2014, Elias informed Guzman that OnBuzz would receive sufficient funding to pay his promised compensation through loans and equity investment within ninety days. Elias had no concrete basis for making such a claim, considering that at the time of these representations Elias had not even submitted loan applications, drafted a business plan, selected a slate of films to which the funding would apply, or prepared financial projections (all of which would be required before receiving a loan or investment capital).

37. During the same timeframe, in discussions with Guzman regarding his potential employment, Van Gorder likewise represented on several occasions that OnBuzz would soon have the capital necessary to pay Guzman's compensation package. Van Gorder made these representations despite that as CFO he was aware of (a) OnBuzz's precarious financial position, (b) the reality of OnBuzz's funding situation and prospects, (c) his own failure to make any proper accounting to the IRS and state and local authorities with regard to OnBuzz's employees, and (d) OnBuzz's inability to pay *any* salaries whatsoever (it already owed several hundred thousand dollars to Johnson that could not be paid).

38. After receiving no compensation whatsoever for a number of months, Guzman and Johnson each expressed concern to Elias and Van Gorder. Nevertheless, Elias and Van Gorder both repeatedly reassured Guzman and Johnson that OnBuzz would soon receive the capital

necessary to provide them with their promised compensation. Such misrepresentations included, but were not limited to (a) direct statements made to Guzman and Johnson to the effect that funding was imminent or that new opportunities would soon provide the revenue needed; and (b) representations in documents such as financial statements and projections that were provided to Guzman and Johnson by Defendants. During the overlap of their employment with OnBuzz, these misrepresentations were often made to both Johnson and Guzman by Elias and Van Gorder during weekly management meetings in August and September of 2014.

39. Throughout Johnson's employment, Elias repeatedly assured Johnson that he could raise "millions," touting connections and knowledge in the film industry that Elias simply did not have. In February 2014, Elias claimed to have "secured funding" for one OnBuzz film that would allegedly be released in November 2014. During the same time period, Elias informed Johnson that OnBuzz either had or would soon have the capital necessary to fund up to seven films. To Plaintiffs' knowledge, funding has still yet to be realized for any film, and at no point was funding "secured" (a fact of which Elias was well aware).

40. In November 2014, Guzman assisted Elias in a marketing presentation to a potential OnBuzz investor named "Bonnie." Guzman had been told by Elias that if funds were invested by Bonnie, then Guzman would receive his back pay. Guzman later learned that Bonnie did in fact invest, but Guzman and Johnson received no payment. In December 2014, Elias notified Guzman that Guzman would receive payment of back pay when OnBuzz received funds from an early investor or an expected $4 million influx of capital. In January, Guzman and Elias met with an investor who mentioned that OnBuzz had received a bridge loan, yet Guzman and Johnson received no payment.

41. Relying on Defendants' repeated misrepresentations, Guzman and Johnson continued working for OnBuzz until it became apparent that the promised funding had never been as certain as was represented, and was in fact extremely unlikely. It is now clear that Defendants were either aware that they were not likely to receive the capital in question, had no intention of using the capital in question to pay Guzman and Johnson, or at minimum had no idea whether sufficient capital would ever be obtained. Defendants' goal was to continue receiving – at no cost and no risk to them – Guzman's and Johnson's labor, high-level executive expertise, and access and introductions to key industry leaders.

42. Defendants' conduct as described herein constitutes common law fraud and fraudulent inducement. Defendants made repeated misrepresentations to Guzman and Johnson, knew such misrepresentations were either false or made the misrepresentations with reckless disregard for their truth, and intended for Guzman and Johnson to rely on them. Guzman and Johnson did rely on such misrepresentations to their detriment, resulting in damages for which they now sue. Guzman and Johnson also seek recovery of exemplary damages as a result of Defendants' fraudulent conduct.

## VI.   ATTORNEYS' FEES

43. Because of OnBuzz's wrongful acts, Plaintiffs have been required to retain the services of multiple attorneys to prosecute their claims. Plaintiffs are entitled to recover their reasonable and necessary attorneys' fees and costs incurred in the prosecution of their claims and this lawsuit pursuant to applicable statutes—including Section 38.001(1), (2), and (8) of the Texas Civil Practice and Remedies Code, and 29 USC § 216(b).

## VII.   JURY DEMAND

44. Plaintiffs demand a jury trial.

## VIII.   RELIEF SOUGHT

THEREFORE, Plaintiffs respectfully pray that the Court:

a.   render judgment against Defendants, jointly and severally, and award Plaintiffs all damages specified herein, including, but not limited to, actual damages (direct and consequential), statutory damages, exemplary damages (as to Guzman's and Johnson's fraud claim), pre-judgment and post-judgment interest, reasonable attorneys' fees and expenses, and costs of suit;

b.   order Elias and Van Gorder to return any distributions to OnBuzz received in violation of §101.206 of the Texas Business Organizations Code; and

c.   award Plaintiffs all such other and further relief, at law or in equity, to which they may show themselves justly entitled.

Respectfully submitted,

JOSEPH LEAK LAW FIRM, PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
Telephone: (512) 676-5827
Facsimile: (512) 857-0118

_____
Joseph M. Leak
State Bar No. 24070115
Email: jleak@josephleaklaw.com

**COUNSEL FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

      This is to certify that a copy of the foregoing was filed on September 14, 2016 with the Clerk of the Court by hand delivery. The CM/ECF system will send a notice of electronic filing to the following counsel of record, and Plaintiffs' counsel will provide a courtesy copy:

M. Wilson Stoker
WELTER LAW FIRM, P.C.
**Counsel for Techertain, LLC**

_____
Joseph M. Leak

## CERTIFICATE OF CONFERENCE

      This is to certify that Plaintiffs' counsel has conferred with counsel for Defendants and asked him to state whether he is opposed or unopposed to the filing of this pleading. Defendants' counsel stated that he would consent to a motion requesting leave to file this pleading, but he has neither opposed nor expressly consented to the direct filing of this Second Amended Petition. Defendants' counsel has instead informed Plaintiffs' counsel in writing that he considers his consent to be unnecessary to the filing of this pleading.

_____
Joseph M. Leak